# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 18-29

**STATE OF LOUISIANA**

**VERSUS**

**MATTHEW R. DOTSON**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 88892
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Asa A. Skinner, District Attorney**
**Terry W. Lambright, Assistant District Attorney**
**P.O. Box 1188**
**Leesville, LA 71446**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
    State of Louisiana


**Mary Constance Hanes**
**Louisiana Appellate Project**
**P.O. Box 4015**
**New Orleans, LA 70178-4015**
**(504) 866-6652**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Matthew R. Dotson

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Defendant, Matthew Dotson, lived with the victims in this case, his girlfriend, Misty Marshall, and her nine-year-old son, Day-Min. Also residing in that home was their daughter, toddler Zinlee Dotson, as well as Ms. Marshall's teenage daughter, Jasmine Moses. At the end of the Thanksgiving 2015 break for school, the children got their school gear together and the family had supper. Day-min and Jasmine each went to bed. When Jasmine woke up the next day, she noticed her mother and brother were not present, and the living room appeared to be in disarray.

When Jasmine saw Defendant, he appeared flustered and was repeatedly going outside and coming back inside. He told Jasmine that they had to pack and leave, and also told her that her mother and Day-Min were in Shreveport. The teenager packed for herself and her younger sister. Defendant then removed the gaming systems and video games. When Jasmine took Zinlee out of her playpen and went outside, she saw their mother's corpse on the ground, wrapped in blue bubble wrap. Defendant tried to load the body into his truck with an engine hoist; when that didn't work, he told Jasmine that she had to help him load the body. Jasmine stated Defendant threatened her and told her he had killed her mother and brother. Defendant was armed with a pistol. Eventually, they drove down a logging trail, put her mother's body in a ditch and put a piece of plywood over it. After that, they drove to a GameStop, where Defendant sold the gaming systems and games. They then left the state.

Ms. Marshall's mother became concerned after not hearing from her and contacted police. During the subsequent investigation, police located Day-Min's corpse in a car in the backyard of the residence.

On February 11, 2016, a Vernon Parish grand jury indicted Defendant on two counts of first degree murder, in violation of La.R.S. 14:30. On September 18 and 19, 2017, a jury was selected. Trial began on September 20, and after a two day trial, the jury found Defendant guilty as charged.

On October 30, 2017, the district court sentenced Defendant to life imprisonment for each count. Defendant now seeks review by this court, asserting two assignments of error. For the following reasons, we affirm Defendant's convictions and sentences.

**ASSIGNMENT OF ERROR NO. 1**

In his first assignment of error, Defendant argues the evidence adduced at trial was insufficient to support his convictions for first degree murder. He claims the State lacked any physical evidence linking him to the crimes and the case was wholly based on circumstantial evidence. His chief argument is that the State did not establish his identity as the killer.

This court, in *State v. Giles*, 04-359, pp. 9-10 (La.App. 3 Cir. 10/6/04), 884 So.2d 1233, 1240-41, *writ denied*, 04-2756 (La. 3/11/05), 896 So.2d 62 (alterations in original), stated:

> With regard to a sufficiency of the evidence claim, this court has set forth the analysis as follows:
>
> > When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel.*

3

*Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

This court in *State v. Hamilton*, 03-1385, pp. 13-14 (La.App. 3 Cir. 3/3/04), 867 So.2d 151, 160, further stated:

[W]hen the conviction is based upon circumstantial evidence, La.R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. *State v. Camp*, 446 So.2d 1207 (La.1984); *State v. Wright*, 445 So.2d 1198 (La.1984). However, La.R.S. 15:438 does not establish a stricter standard of review on appeal than the rational juror's reasonable doubt standard. The statute serves as a guide for the jury when considering circumstantial evidence.

Defendant argues he was not the person who attacked the victim. In *State v. Jones*, 02-1176, p. 13 (La.App. 3 Cir. 2/5/03), 839 So.2d 439, 446-47, *writ denied*, 03-886 (La.11/7/03), 857 So.2d 516, this court quoted the supreme court as follows:

The Louisiana Supreme Court in *State v. Neal*, 00-0674 (La.6/29/01); 796 So.2d 649, stated:

As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. *See State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12. . . . The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the "fact finder's discretion only to the extent necessary to

4

> guarantee the fundamental due process of
> law." *Mussall*, 523 So.2d at 1310 (La.1988).

*Id*. at p. 11, 658.

We note that Jasmine Moses testified Defendant confessed to her that he had killed her mother and brother. As shown in the analysis just cited, a single witness's testimony can support a conviction. Defendant suggests that Jasmine was not credible because she did not try to escape from Defendant while they were traveling together and because she testified pursuant to an immunity agreement. However, the assessment of any witness's credibility is within the province of the factfinder. Further, the State notes Defendant told relatives that he had done something worse than robbing a bank or "something really bad" but did not want to mention any details that would make them accessories to the crime. Defendant's argument that the evidence merely demonstrated that he and Jasmine were accessories after the fact is negated by Jasmine's testimony regarding his confession to her.

Near the end of his argument, Defendant briefly claims that the evidence did not establish that the killing of Ms. Marshall was a first-degree murder, as the State failed to prove Defendant had the specific intent to kill more than one person or that Misty Marshall was a witness to any crime.[1] However, the evidence indicated that Defendant killed the mother and son at their residence on the same night, and this was a sufficient basis for reasonable jurors to conclude Defendant had the requisite intent. La.R.S. 14:30(A)(2).[2]

---

[1] Killing a witness to a crime is a violation of La.R.S. 14:30(A)(9).

[2] The statute states, in pertinent part:

> A. First degree murder is the killing of a human being:
>
> . . . .
>
> (3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.

5

Therefore, we find Defendant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant complains the district court allowed the State to introduce unduly gruesome autopsy photographs at trial. Defendant cites the following supreme court case:

> "Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing, or place depicted." *State v. Sepulvado*, 93-2692, p. 7 (La.4/8/96), 672 So.2d 158, 164. A district court's ruling with respect to the admissibility of photographs will not be overturned unless it is clear the prejudicial effect of the evidence outweighs its probative value. *State v. Maxie*, 93-2158, p. 11 n. 8 (La.4/10/95), 653 So.2d 526, 532 n. 8.

> Even when the cause of death is undisputed, the state is entitled to the moral force of its evidence and post-mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing cause of death, as well as the location and placement of wounds, and to provide positive identification of the victim. *State v. Koon*, 96-1208, p. 34 (La.5/20/97), 704 So.2d 756, 776; *State v. Watson*, 449 So.2d 1321, 1326 (La.1984); *State v. Kirkpatrick*, 443 So.2d 546, 554-55 (La.1983). Photographic evidence will be admitted unless it is so gruesome that it overwhelms jurors' reason and leads them to convict without sufficient other evidence. *Koon*, 96-1208 at 34, 704 So.2d at 776. The admission of "gruesome photographs is not reversible error unless it is clear that their probative value is substantially outweighed by their prejudicial effect." *State v. Broaden*, 99-2124, p. 23 (La.2/21/01), 780 So.2d 349, 364, quoting *State v. Martin*, 93-0285, pp. 14-15 (La.10/17/94), 645 So.2d 190, 198.

> The probative value of the photographs in this case distinguishes them from the photographs in *State v. Morris*, 245 La. 175, 157 So.2d 728 (1963), the only case reversed by this court on grounds of the improper introduction of gruesome photographs. Morris involved the gratuitous introduction of "gruesome and ghastly" photographs depicting the progress of an autopsy in an "increasingly grotesque and revolting manner." *Id*. at 730. While *Morris* also involved a scenario in which the defendant did not dispute the fact he had murdered the victim, the photographs in this case did not approach the gratuitous nature of those in *Morris*. Here, the photographs merely reflect the injuries suffered by the victims and the condition and location of those injuries on their bodies. The court in this case engaged in a thoughtful and detailed examination of each photograph and excluded 7 of the 22 photographs the state sought to

introduce. The defendant shows no abuse of discretion on the part of the district court in admitting the remaining photographs.

*State v. Magee*, 11-574, p. 54-55 (La. 9/28/12), 103 So.3d 285, 323, *cert. denied,* 571 U.S. 830, 134 S.Ct. 56 (2013).

At trial, defense counsel objected to the introduction of the "autopsy photographs as being unnecessary and only – only meant to provoke the . . . sympathy of the jury." The district court replied:

> Okay, uh, I believe that there is some probative value to these. Uh, as I noted before in other photographs there is – there are elements of this crime that he's charged with that can be established in various ways but one of them will be to have actual photographs to depict the kinds of wounds that were inflicted upon the body to allow the jury to determine whether that – that element has been proved. Uh, there's also photographs on the – the mother depicting the tattoos which would be pertinent as to identification for one thing and then other, uh, evidence that would corroborate further testimony (unintelligible). So, there's probative value in all these photographs, and, so, I will overrule the objection.

In viewing the images at issue, they are unquestionably graphic and gruesome. However, gruesome images are often likely to be introduced in murder cases. Although certain photographs of the child Day-Min's head wounds and Ms. Marshall's corpse are particularly graphic, they aided the pathologist's testimony relating to wounds. After reviewing the record, we cannot say the district court abused its discretion in balancing the probative value of these photographs against their prejudicial effect. Therefore, this assignment of error lacks merit.

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**