## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 24-597

**STATE OF LOUISIANA**

**VERSUS**

**MICHAEL J. COMEAUX**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 19-K-0320-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CLAYTON DAVIS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Wilbur L. Stiles, and Clayton Davis, Judges.

**AFFIRMED.**

**Chad Patrick Pitre**
**District Attorney**
**Kathleen E. Ryan**
**Assistant District Attorney**
**P.O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-3041**
**kryan@stlandryda.org**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Ikerd Law Firm, LLC**
**600 Jefferson St., Suite 903**
**Lafayette, LA 70501**
**(37) 366-8994**
**chad@ikerdlaw.com**
**COUNSEL FOR DEFENDANT APPELLANT:**
 **Michael J. Comeaux**

**DAVIS, Judge.**

Defendant, Michael J. Comeaux, appeals his convictions for sexual battery and pornography involving a juvenile, as well as his sentences of thirty-five years at hard labor for sexual battery and fifteen years at hard labor for pornography involving a juvenile. For the following reasons we affirm Defendant's convictions and sentences for sexual battery and for pornography of a juvenile.

## PROCEDURAL HISTORY

On June 11, 2020, the St. Landry Parish District Attorney's Office filed a bill of information charging Defendant, Michael J. Comeaux, with sexual battery in violation of La.R.S. 14:43.1; indecent behavior with a juvenile, in violation of La.R.S. 14:81; and pornography involving a juvenile, in violation of La.R.S. 14:81.1. The parties selected a jury on July 19, 2023; on the same date, the court dismissed the indecent behavior charge. The jury began hearing evidence on August 21, 2023, and found Defendant guilty on the remaining charges on August 23, 2023.

On October 18, 2023, the district court sentenced Defendant to thirty-five years at hard labor for sexual battery and fifteen years at hard labor for pornography involving a juvenile. The sentences are to run concurrently and are without benefit of parole, probation, or suspension of sentence.

Defendant now appeals his convictions, assigning three errors, although the first two rest on the same legal basis. Defendant alleges the following.

## ASSIGNMENTS OF ERROR

1.  The State failed to prove that Michael Comeaux was guilty of sexual battery.

2.  The State failed to prove Michael Comeaux was guilty of possessing pornography involving juveniles.

3.     Trial Counsel provided ineffective assistance of counsel regarding the testimony of Det. Tezeno. Counsel failed to object on constitutional confrontation grounds to require the State to offer evidence directly from the Attorney General's Office regarding the photo investigation. Counsel also failed to object to the hearsay testimony regarding where the photos were allegedly stored and how the manner of storage proved knowledge and possession on behalf of Michael Comeaux.

## FACTS

At the time of the events at issue, Defendant was the live-in boyfriend of victim L.F.'s mother.[1]  On September 12, 2018, L.F., who was eleven years old at the time, reported to her fourth-grade teacher that her "daddy" had been touching private areas of her body.  Upon speaking with the schools' principal, L.F. further reported that her "dad" had inserted his penis into her.

At the time of the trial, L.F. was sixteen years old. She testified that Defendant abused her numerous times, and the abuse started when she was seven years old.  The abuse included penile penetration.  She also testified that Defendant took nude photographs of her.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record.  After reviewing the record, the Court finds no errors patent.

## ASSIGNMENTS OF ERROR NO. 1 & 2

In his first two assignments of error, Defendant challenges the sufficiency of the evidence adduced against him at trial.  As the underlying law is the same for both assignments of error, the Court will discuss both together.

The analysis for claims challenging the sufficiency of trial evidence is well-settled:

---

[1]The victim's initials are used in accordance with La.R.S. 46:1844(W).

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. [citation omitted] It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. [citation omitted] In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

La.R.S.14:43.1, which proscribes sexual battery, states in pertinent part:

A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:

(1) The offender acts without the consent of the victim.

(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender.

At trial, L.F. testified that Defendant, a grown man, touched her buttocks, chest, and genitals without her consent. The victim was sixteen at the time of trial and eleven when she reported the matter at school. Defendant touched her with his fingers and penis, even inserting his penis into her body. He also made the young victim touch his penis. L.F. further testified that Defendant touched both her anus and vagina.

The victim stated that the incidents occurred many times, "probably like a hundred to like two hundred." Often, Defendant would put a shirt or blanket over her face so she could not see anything, but she would feel a sharp pain in her vagina. She told him "no" multiple times, but he committed the acts anyway. Sometimes, he would forcibly move her to another room to commit the acts.

3

During cross-examination, L.F. also stated that Defendant put his penis in her mouth. She acknowledged that she had not revealed this act during the investigation. Trial counsel asked her why she gave the note to her teacher on the day she reported Defendant's acts. The young victim replied that she was tired of being used for sex. Counsel asked whether she made the allegations because she was being punished at home. She denied the premise of the question and stated, "I was tired of being used for what I had at a young age."

On re-direct examination, some of L.F.'s responses indicated that she bled after being penetrated by Defendant, but she thought the bleeding, along with cramps and nausea, was a consequence of her menstrual cycle. She testified that Defendant held her down during the various acts, that he would penetrate her with his penis, and that he would withdraw it and ejaculate onto her. She did not report the offenses earlier because Defendant threatened to throw her, her mother, and their pet out of the residence.

Further, the State introduced a recorded interview that the victim gave to forensic interviewer Jennifer Smith at Hearts of Hope, a children's advocacy center. The allegations L.F. made in that interview were substantially the same as those she made on the witness stand.

The State also adduced testimony from three medical professionals. A pediatrician, Dr. Kermen Beauchamp-Roche, examined the victim in September of 2018. He found that she had a tear in her hymen at the four o'clock position. Dr. Beauchamp-Roche testified that such a tear was unusual for an eleven-year-old girl. He thought sexual abuse was possible but could not say so definitively and referred the victim to another physician, Dr. Fontenot.

Dr. Kayla Fontenot, a gynecologist, testified that she examined the victim pursuant to a referral. The doctor found the young girl's hymen was distorted, with

corresponding distortion at the bottom of her vaginal opening. There was also some swelling and redness around the child's vaginal opening. The doctor stated there was no vaginal swab, as too much time had passed between the last alleged incident and the exam for DNA to be recoverable. The victim's injuries were consistent with sexual assault, but Dr. Fontenot did not definitively state that the injuries were caused by sexual assault. Dr. Fontenot also testified that a breached hymen does not usually heal.

Rebecca Havlik, a Sexual Assault Nurse Examiner, also testified. She examined the victim about eighteen days after the last reported date of sexual assault. Nurse Havlik found an irregular area in the victim's hymen in an area between the six and seven o'clock areas. However, Nurse Havlik did not make a finding of sexual assault. She acknowledged that the irregularity in the victim's hymen could have been a "normal variant." Also, she found no injuries to L.F.'s anus. Nurse Havlik testified that the tissue of the vagina and anus can heal quickly. Further, she testified that "[o]nly about ten percent" of young sexual abuse victims will present "definitive findings on exam."

On cross-examination, defense counsel asked about the discrepancy between Nurse Havlik's testimony in which she identified a hymenal irregularity at the six or seven o'clock position and Dr. Beauchamp's testimony that he had seen a hymenal tear at the four o'clock position. Nurse Havlik acknowledged the discrepancy but again noted that the relevant tissues can heal quickly. In response to questioning, she noted that multiple different traumas can cause different injuries but that a particular injury will not move to a different location. She noted there were no definitive findings of sexual assault. On re-direct examination, Nurse Havlik noted that healing from sexual trauma can take place in as little as two days.

The State presented other witnesses, but the Court notes the victim's testimony alone satisfied the elements of the crime. Under the jurisprudence, "It is well-settled that a jury is free to believe some, none, or all of any witness's testimony." *State v. Perkins*, 11-955, p. 10 (La.App. 3 Cir. 3/7/12), 85 So.3d 810, 817. Further, "a single witness's testimony can support a conviction." *State v. Dotson*, 18-29, p. 5 (La.App. 3 Cir. 10/3/18), 257 So.3d 229, 232, *writ denied*, 18-1821 (La. 4/22/19), 268 So.3d 296.

Defendant acknowledges as much in his brief. However, Defendant notes the discrepancies among the expert witnesses' various identifications of the location of the victim's hymenal injuries. He implies that the experts' testimonies made the State's case weaker than it would have been had the State proceeded without the experts. As noted earlier, defense counsel confronted Nurse Havlik with these discrepancies at trial. She merely stated that she could not speak for the other experts and was relying on her own examinations of L.F.

Much of Defendant's appellate argument rests on the general premise that L.F.'s vaginal and anal areas would have been much more damaged if the girl had suffered the many instances of penile and digital penetration that she alleged. This is not a rape case; therefore, penetration was not an element the State had to prove. *See* La.R.S. 14:41. Thus, Defendant is left with the argument that the victim was not credible. Her testimony indicated that some form of penetration occurred, but the physical evidence, in Defendant's view, did not support her claims. Also, Defendant notes, albeit briefly, that Detective Jessica Tezeno of the Eunice Police Department testified that the victim's own mother had told Tezeno that the victim made up stories and had a very active imagination.[2]

---

[2]L.F.'s mother was dead at the time of trial.

6

As made clear by the law previously cited, the assessment of weight and credibility of evidence lies squarely within the province of the trial jury. The following assessment by the first circuit illustrates the point that the jury is free to weigh conflicting testimony and draw reasonable conclusions:

> The scope of appellate review for the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. [citation omitted].

> The evidence consisted of the testimony of four eyewitnesses, two experts for the State, and two experts for the defense. Because some of the testimony was conflicting, the jury had to make credibility decisions. We find no error. A rational trier of fact could have found defendant guilty beyond a reasonable doubt, accepting facts most favorable to the State.

*State v. Davis*, 451 So.2d 1, 3 (La.App. 1 Cir. 1984).

Thus, the trial jury was faced with a young girl's allegations that an adult male had sexually abused her and also with physical evidence that there were unexplained injuries or irregularities in the girl's vaginal area.[3] The jury could have assessed such evidence, including the associated conflicts and discrepancies, and rationally concluded that Defendant was guilty as charged.[4]

Defendant's second assignment of error alleges the State failed to prove Defendant was guilty of pornography involving a juvenile. The offense is governed by La.R.S. 14:81.1, which states, in pertinent part:

> A. (1) It shall be unlawful for a person to produce, promote, advertise, distribute, possess, or possess with the intent to distribute pornography involving juveniles.

> . . . .

---

[3]Defendant is correct in his assertion that the other State witnesses' testimonies did not present eyewitness accounts and were essentially repetitions of what the victim had told them.

[4]The forensic interview of L.F. presents an eerie juxtaposition of an eleven-year-old playing with coloring books but making statements reflecting sexual knowledge she should not have had at her age. The Court believes this is not the sort of statement which a child would typically have the knowledge or experience to fabricate.

(8) "Pornography involving juveniles" is any photograph, videotape, film, or other reproduction, whether electronic or otherwise, of any sexual performance involving a child under the age of seventeen.

(9) "Produce" means to photograph, videotape, film, or otherwise reproduce pornography involving juveniles, or to solicit, promote, or coerce any child for the purpose of pornography involving juveniles.

(10) "Sexual performance" means any performance or part thereof that includes actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals or anus.

Defendant argues that the pictures do not meet the legal definition of "pornography" because L.F.'s genitals and anus are covered by her panties in all of the pictures. The photographs are highly sexually suggestive and imitative of sexual positions and acts. They depict a child, naked other than her panties, posed in sexual positions. In some images, the nearly naked victim's genital region is the focal point, with the victim's legs spread wide open towards the camera, as is often done in pornographic material. In others, the victim's genital and anal regions are the focus, the photographs taken from behind with the child's projecting posterior as the focal point, imitating a sexual position and displaying a receptiveness to intercourse. There is no mistaking that these pictures were taken for the sexual gratification of the author of the photographs, particularly in light of the context in which the photos were taken, which was the repeated sexual abuse of the subject by the author.

As illustrated above, La.R.S. 14:81.1 in part defines pornography involving juveniles as photography of sexual performance. Sexual performance in turn is in part defined as "actual or simulated intercourse." According to Merriam-Webster's thesaurus, synonyms of "simulated" include "mimic," "imitative," and "pretend." *SIMULATED Synonyms: 159 Similar and Opposite Words*, Merriam-Webster

Thesaurus (March 13, 2025, 1:28 PM), https://www.merriam-webster.com/thesaurus/simulated. Given that the poses appear to be sexual positions and the victim was nearly nude, as to suggest to the viewer that sexual acts are in the process of taking place, the images appear to be simulating, i.e. mimicking or imitating, sexual intercourse.

Also given the graphic vulgar exposition of the victim's genital and anal areas, even though obscured by underwear, these photographs would also appear to constitute a "lewd exhibition of the genitals or anus." At the very least, they are "simulated" exhibition of these areas. Note that under prevailing rules of syntax, the initial modifier "will tend to govern all elements in the series unless it is repeated for each element." *The American Heritage Guide to Contemporary Usage and Style* p. 343 (Houghton Mifflin Company 2005).

"Actual or simulated" appears to modify all the acts enumerated afterwards in the list, including "lewd exhibition of the genitals or anus," not only because of the rules of syntax, but also because it would be illogical and absurd to assume that simulated sexual intercourse would be criminal but simulating/imitating bestiality or oral or anal sex (falling under deviate sexual intercourse) with a child would be permitted under the law. Therefore, *a fortiori*, applying the modifiers to all subsequent terms renders the clause logical and internally consistent, indicating this was the legislature's intent. Consequently, the statute would prohibit simulated "lewd exhibition of the genitals or anus."

Reviewing all the evidence presented, we conclude that a rational trier of fact could have found every element of the offense of pornography involving juveniles proven beyond a reasonable doubt. Consequently, the Court rejects Defendant's second assignment of error and affirms the jury's conviction and the trial court's sentencing.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, Defendant argues that his trial counsel was ineffective for failing to raise hearsay-based and Confrontation Clause-based grounds to testimony that led to the introduction of the pictures at issue in the second assignment of error. Defendant states that trial counsel did attempt to use other means to keep the picture from being admitted. However, he complains that said counsel did not raise either the Confrontation Clause or hearsay provisions and so did not pursue all avenues available to bar the pictures.

This court has stated the following regarding ineffective assistance of counsel claims on appeal:

> At the outset, we note that an ineffective-assistance-of-counsel claim is more appropriately addressed in an application for post-conviction relief. [citation omitted]. This is especially true when the claim is based on evidence not in the record. [citation omitted] However, when the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy….
>
> In assessing a claim of ineffectiveness of counsel, the defendant must show two things: (1) that his attorney's performance was deficient, and (2) that the deficiency prejudiced his defense. [citation omitted]. Both elements must be proven. [citation omitted]

*State v. Dunbar*, 24-73, p. 7 (La.App. 3 Cir. 9/25/24), 394 So.3d 915, 920. The State suggests the current appeal is not the proper place to address Defendant's claim, but we find that there is sufficient information in the record to enable this court to dispose of the matter.

As the State examined Detective Tezeno, the following colloquy occurred:

Q.   At some point during this investigation, did you learn about a warrant that was being executed at that home?

A.   Yes, I did.

Q.   What was that concerning?

A.   I don't know what that no knock warrant was concerning. It was the Attorney General's Office. They came to the Eunice Police

10

Department and got with me, telling me they learned that I was doing an investigation, and they gave me Michael Comeaux's name, and they gave me the address. They would not tell me what they were doing, but they offered me photos.

Q.    They offered you some photos?

A.    That they dumped from an electronic device. I don't know if it was a computer or a PlayStation, because I don't know what their purpose was.

Q.    Do you know what those photos were?

MR. ABSHIRE:

        Your Honor, I would object. We have to get those officers here for those photographs.

MS. DUHON CONTINUES:

Q.    You saw the photos?

A.     I did.

Q.    Did you make those photos part of the case file?

A.    It should be, because I put everything together.

MR. ABSHIRE:

        Your Honor, she didn't obtain the photos. She can't testify to the validity of them, the date of them, or any –

THE COURT:

        Y'all come up here a second.

WHEREUPON AN OFF THE RECORD DISCUSSION TAKES PLACE

THE COURT:

        The objection is overruled. You can ask the question.

MR. ABSHIRE:

        Let Mr. Comeaux's objection to the ruling be noted.

THE COURT:

The objection is noted.

MS. DUHON CONTINUES:

Q.    Detective Tezeno, the photographs that the Attorney General's Office took they provided a copy of those to you?

A.    Yes, they did.

Q.    And those were submitted to our office with your case file?

A.    Should have been.

Q.    Whenever you close a case, what do you normally submit to the District Attorney's Office?

A.    Everything that I've gathered, from photos to statements.

Q.    And those photos that were given to you, do you remember who was in those photos or what those photos were?

A.    In the photos was [L]. One photo, her face was covered, that's the main one I can remember. I can't remember them all.

MS. DUHON:

Your Honor, can I approach?

THE COURT:

Yes.

MS. DUHON:

I'll just mark these as State, in globo, 2.

MS. DUHON CONTINUES:

Q.    Could you identify what those photo is [sic]?

A.    The one at the top is her with some tights or leggings or stockings.

Q.    Who is her?

A.    L[.] F[.], and the one on the bottom, L[.] F[.], as well, with only her panties on. This one -- these here is [sic] L[.] F[.], with only her panties on.

Q.     Is this the same child that you interviewed regarding the sexual abuse complaint at East Elementary?

A.     Yes.

Q.     And about hold [sic] is she in those photos?

A.     Eight or nine. I'm not sure. I don't remember.

Q.     Okay. The next photo.

A.     The next photo here is also L[.] F[.]. She's in her nighty and her panties. This one here is L[.] again with a straw in her mouth in her panties and her house slippers. This one here is also L[.] in her nightgown the first three, and the last one she's in her panties with some high heels. The top one is her in a pajama set. The third one she's still in her pajama set. The last one is just the one I remember with the face covered and only her panties and some kind of shirt.

Q.     Detective Tezeno, once you received those photos from the Attorney General's Office, did you charge Mr. Comeaux with any additional charges?

A.     No, I did not. No, I did not.

Q.     Do you remember what he was charged with?

A.     Sexual battery.

Q.     No other charges?

A.     Not from me.

     MS. DUHON:

          Your Honor, at this time, I would like to publish the photographs to the jury.

     MR. ABSHIRE:

          Your Honor, again, I'm going to raise my objection for foundation. The detective did not take the photographs. She can identify them as presented to her, but the Attorney General are [sic] the ones who acquired them. How they required them they [sic] shouldn't be published or permitted. She can describe what she was received [sic] in her investigation. But as far as for that, there was no foundation laid as to how those were obtained through the Attorney General's Office.

13

THE COURT:

The objection is overruled. Let it be noted for the record. You can publish the photos.

THE PHOTOS ARE PUBLISHED TO THE JURY

THE COURT:

State, you may continue.

MS. DUHON CONTINUES:

Q.     Detective Tezeno, did the Attorney General's Office indicate where those photographs came from?

A.     I don't remember if it was an Xbox game or a computer. I don't remember.

Q.     Did they say who it was belonging to [sic]?

A.     He told me that he retrieved this –

MR. ABSHIRE:

Your Honor, I'll object hearsay. He told me.

THE COURT:

Sustain.

MS. DUHON CONTINUES:

Q.     Where was that search warrant executed?

A.     731 East Vine; Eunice, Louisiana.

MR. ABSHIRE:

Your Honor, again, objection. It was -- she hasn't testified that she was part of that or even reviewed that search warrant.

THE COURT:

If she knows, overrule.

MS. DUHON CONTINUES:

Q.     Who lives at that address?

14

A. At the time, it was [the victim's mother] and Mr. Michael Comeaux.

Due to the unrecorded discussion regarding Defendant's objection, this court could elect to relegate the issue to the post-conviction relief process, in which the parties would have an opportunity to develop the record. In particular, they would be able to establish whether Defendant raised a confrontation issue at the bench. Some of the discussion in the colloquy just cited suggests that Defendant's objection alleged a lack of foundation for the pictures. However, it is not possible to know with certainty what was discussed in the unrecorded conference.

However, the record reveals there is enough information in evidence to show that Defendant would not be able to establish ineffectiveness of trial counsel even if it were demonstrated that he did not raise a confrontation-based objection at trial. Photographs are admissible when a witness establishes that they are accurate depictions of a given subject. The fifth circuit has explained:

> Generally, photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted. [citation omitted]. For admission of a photograph, the proper foundation is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it as such. [citation omitted]. To be admissible, a photograph need not be identified by the person who took it. [citations omitted] Further, "[a] defect in the chain of custody goes to the weight of the evidence rather than to its admissibility." *State v. Frank*, 549 So.2d at 405 (citing *State v. Sam*, 412 So.2d 1082 (La.1982); *State v. Williams*, 447 So.2d 495 (La.App. 3 Cir.1984), *writ denied*, 450 So.2d 969 (La.1984)).

*State v. Becnel*, 04-1266, p. 16 (La.App. 5 Cir. 5/31/05), 904 So.2d 838, 851.

In the above exchange, Detective Tezeno identified the little girl in the photographs as the victim. The detective had personal knowledge of the young girl's appearance due to personal contact during the investigation. Also, the pictures were clearly relevant to the case, as they were the basis of one of the charges. Thus, the pictures met the baseline for proper foundation and admissibility.

15

In view of the established regime for admissibility of photographs, the confrontation of any officers who initially located the pictures was superfluous, as their testimony was unnecessary. Tezeno gave testimony that established the foundation for admissibility, and Defendant had the opportunity to confront her through full cross-examination.

Based on the foregoing discussion, the Court finds that Defendant would not be able to demonstrate that his trial counsel's performance was deficient. There was no necessity for trial counsel to raise a confrontation claim, as confronting the investigators who initially found the pictures was not pertinent to their admissibility.

Defendant argues that he should have been able to confront the officers who initially located the pictures because without their testimony, he could not establish who had access to the device or location where they were found. This was potentially pertinent to the question of possession of the pictures. This argument, however, is more in the nature of weight and the establishment of the elements of the crime.

Defendant also argues that trial counsel should have raised a hearsay objection to the information Tezeno provided about receiving the pictures from the Attorney General's Office. In the testimony quoted earlier, trial counsel objected to the detectives' testimony on this subject. Although he did not use the words "hearsay" or "confrontation," trial counsel clearly asserted to the court that personnel from the Attorney General's Office should have been present to testify. Also, the detective was frank about her lack of information regarding the finding and seizure of the pictures. Again, Defendant has failed to show deficient performance. Consequently, the Court need not address whether Defendant's case was unduly prejudiced, but briefly, there was no such prejudice. Moreover, the

16

prejudice allegation dovetails with Defendant's arguments regarding the possession element of La.R.S. 14:81.1, and can be succinctly addressed.

The victim, L.F. herself testified not only that she was the child in the pictures, but also that Defendant is the person who took them. Thus, the jury heard evidence that Defendant possessed the pictures in some sense, even if briefly. Consequently, he clearly "produced" them, which like possession is prohibited by La.R.S. 14:81.1. Defendant has not shown that trial counsel's alleged deficiencies in performance improperly prejudiced his case.

For the reasons discussed, this assignment of error lacks merit.

## DECREE

Defendant's convictions and sentences for sexual battery and for pornography are affirmed.

**AFFIRMED.**